IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

LYNELL HUGHES, )
                Plaintiff, )
         v. )
                        )
V.I. WHEEL ESTATE, LLC d/b/a )
PEPPERTREE TERRACE, )
              Defendant. )

SX-18-CV-33

ACTION FOR DAMAGES
(JURY)

2020 VI Super 013 U

**MEMORANDUM OPINION**

¶ 1    THIS MATTER comes before the Court on Defendant V.I. Wheel Estate's Motion for Summary Judgment, filed May 1, 2019; Plaintiff Lynell Hughes' Memorandum of Law in Support of Opposition to Defendant's Motion for Summary Judgment, filed June 3, 2019; and Defendant's Reply, filed June 25, 2019. The Motion came on for hearing November 5, 2019. For the reasons that follow, Defendant's Motion will be granted, and Plaintiff's Complaint will be dismissed with prejudice.

**BACKGROUND**

¶ 2    Defendant V.I. Wheel Estate, LLC ("Peppertree") owns and operates Peppertree Terrace, a mobile home park on St. Croix. Peppertree leases lots to mobile home owners. Peppertree also owns some mobile home units in Peppertree Terrace and rents out those units. Plaintiff Lynell Hughes purchased the mobile home located on Peppertree Terrace lot 7-2 for $5000, as evidenced by Bill of Sale dated May 30, 2016. Motion, Exh. G.[1] She lived there with her children for more than a year after the purchase prior to Hurricane Maria, paying rent to Peppertree for the lot. Opposition, Exh. 1, Hughes depos. at 20. Peppertree owned the mobile home trailer unit on lot 7-1, immediately adjacent to Hughes' unit. Opposition, Exh. 1, Natalie Humphreys depos. at 8.

¶ 3    On September 19, 2017, Hurricane Maria struck St. Croix. During the storm, the mobile home unit owned by Peppertree on lot 7-1 came loose from its foundation and, Hughes claims, crashed into the side of her mobile home on the adjacent lot. Neither Hughes nor any other person

---

[1] By her filing herein, Hughes claims to have "purchased the home in May 2016 for $25,000." Opposition, at 2. The contradiction appears to stem from Hughes' testimony that she made improvements after purchasing the unit: "If I had to put it on the market before Maria, with the cost that I fixed it up to, I would have asked for at least $25,000, 'cause I brought that home back." Motion, Exh. A, Hughes depos. at 12.

was physically present at Peppertree Terrace during the storm, and there were no eyewitnesses to the damage.

¶ 4     Hughes filed the present action in January 2018. The Complaint alleges that Peppertree was negligent by failing to properly secure its mobile home unit on lot 7-1, and by failing to inspect and maintain the anchors securing the trailer to its foundation. Plaintiff alleges that Peppertree's negligence caused Peppertree's trailer on lot 7-1 to be blown off its foundation, resulting in damage to Hughes' unit when Peppertree's adjacent unit it collided into it, and she seeks damages for losses she claims to have incurred.

## LEGAL STANDARD

¶ 5     In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). A disputed issue is genuine if a reasonable trier of fact could determine that issue in favor of the non-moving party. *Id.* at 391-92. "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact," and that judgment is appropriate as a matter of law. *Id.* at 379-80.

¶ 6     Reviewing Defendant's Motion, the Court does not weigh the credibility of the evidence. Rather, all inferences that may be reasonably drawn from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations that are properly supported by the record are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party carries its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall*, 58 V.I. 431, 436 (2013) (citations omitted). In responding to

the movant's evidence showing the existence of no genuine issue of material fact, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla, showing a genuine issue for trial," regarding such disputed fact. *Perez*, 59 V.I. at 527-28.

¶ 7　"A party asserting that a fact… is genuinely disputed must…(B) support the assertion by: (i) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (ii) showing that the materials cited do not establish the absence… of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations and must present actual evidence showing a genuine issue for trial." *Machado*, 61 V.I. at 379. "Importantly, there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Charles v. Arcos Dorados d/b/a McDonald's Restaurant,* 2019 VI 29, ¶ 13 (internal quotation and citations omitted).

¶ 8　To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the cause of action. *See Perez*, 59 V.I. at 528. 43 In *Machado*, the Supreme Court confirmed "the foundational elements of negligence—(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff." 61 V.I. at 380. At trial, Hughes has the burden of proving each element of her negligence claim by a preponderance of the evidence. *Id.* To defeat summary judgment, she must point to evidence in the record, not mere allegations, that demonstrates that, as to each element of negligence, a jury could reasonably return a verdict in her favor.

## DISCUSSION

¶ 9　By its Motion, Peppertree argues that it is entitled to entry of judgment on this record because: (1) Plaintiff cannot prove that any act or omission by Peppertree caused her damages; and (2) even if Plaintiff can assert a claim for property damage, any recovery is limited to the diminution in value of the mobile home unit. Because the first issue is dispositive, the issue of the proper measure of damages is not addressed.

¶ 10    To survive summary judgment on the question of whether any act or omission of Peppertree caused her damages, Hughes is "required to provide sufficient competent evidence – direct or circumstantial – to support all the elements" of her negligence claim, "including the element of proximate causation." *Charles v. Arcos Dorados,* 2019 VI 29, ¶ 19 (summary judgment granted upon review of the elements of a claim of breach of the implied warranty of merchantability, including the element of causation).[2] As nonmovant, Hughes may not rely upon mere allegations of proximate causation, but must present actual evidence upon which a jury could find that Peppertree's negligence was the legal cause of damages she incurred.

¶ 11    Peppertree argues that summary judgment is required on this record in light of the failure of Hughes to present expert opinion evidence on the issue of causation, and that without such affirmative evidence, the Motion must be granted.[3] Defendant argues that Plaintiff has not disclosed "an expert on hurricane anchors and straps." Further, Peppertree notes that "Plaintiff has retained no engineer to opine about the standard of care that should have been employed by Peppertree, that there was anything wrong with the mobile home straps, or that had alternative strapping materials or methods been used, the alleged damages would not have occurred." Motion, at 5.[4]

---

[2] In *Charles,* the plaintiff claimed that the defendant McDonald's restaurant breached the implied warranty of merchantability by serving a tainted fish sandwich from which she alleged to have contracted food poisoning. "Importantly, food poisoning cases are governed by the same basic rule of causation that governs other tort cases." 2019 VI 29, ¶ 18 (citation omitted).

[3] Peppertree also argues that because there was no eyewitness to the damage to Hughes' unit during the hurricane, a jury would necessarily need to speculate that the damage was caused by the removal of Peppertree's adjacent unit from its foundation, rather than by some independent source, such as the force of the wind alone. There is conflicting photographic and testimonial proof as the extent of the debris field from the dislodging of Peppertree's unit on lot 7-1, and Hughes testified that the Peppertree unit's chassis landed in her unit. Motion, Exh. A, Hughes depos. at 80. It is clearly true that a claimant's speculation as to the cause of her damages is an insufficient basis to establish liability. *See Etienne v. United Corp.,* 44 V.I. 113, 123 (V.I. Terr. 2001). However, it is not certain here that a jury would be unable to reasonably infer from Plaintiff's circumstantial evidence that at least some of the damage to Hughes' unit resulted from being struck by Peppertree's adjacent dislodged unit.

[4] The only expert opinion evidence offered by Hughes relates to the issue of damages. She proffers the expert report and Estimate of Michael P. Hand and Associates, Inc., General Contractor, to establish damages. While Hughes purchased the unit on lot 7-2 the year before the hurricane for $5,000, the expert's calculation of damages, determined by the amount to repair the unit, is in the sum of $85,842.40. "This measure of damages will make her whole." Opposition, at 8; Exh. 2.

¶ 12    Disputed evidence regarding the manner by which Peppertree's unit on lot 7-1 was secured and the extent of inspections and maintenance reinforce the need for clarification through expert testimony. Hughes testified that straps securing the unit on lot 7-1 were rusty and some were missing prior to Hurricane Maria. Opposition, Exh. A. Hughes depos. at 35-36. While Peppertree's employee Hilberto Ayala testified that he did not inspect the unit before Maria, Peppertree employee Henry Mason testified that he had confirmed that the straps on the lot 7-1 unit were intact shortly before Maria. *Id.* Ayala depos. at 5, 9; Mason depos. at 18-19.

¶ 13    These factual disputes underscore the need for expert testimony. Peppertree argues that "very few people are familiar with mobile home anchoring standards and metallurgy. How many straps and anchors are standard, if any? What is the standard for maintaining them, if any? Would brand new anchors and straps withstand a category 5 storm? The jury will not be able to answer these questions without speculation. That is why expert testimony is required." Peppertree argues that the issues of metallurgy and construction and maintenance standards are central as to the liability issues in this case, and without expert testimony, a jury must necessarily be called upon to speculate on the issue of legal causation.

¶ 14    Plaintiff counters that the summary judgment record is more than sufficient for a jury to find that Peppertree failed to exercise reasonable care to properly anchor its unit, and that on account of that failure, Peppertree's unit crashed into Hughes' unit. Plaintiff relies upon her own testimony that "the straps securing the home on Lot 7-1 were rusty and rotting and not secured to the ground," to reach the conclusion that Peppertree's unit "broke away from its foundation because Peppertree failed to adequately secure it with straps anchored into the ground." Opposition, at 3. Plaintiff insists that "No technical or specialized knowledge is necessary to understand the facts of this case. The facts showing Peppertree's negligence here - the rusty and rotted anchors on the home on lot 7-1 are within the common experience of the average juror. Therefore, expert testimony is unnecessary." *Id.* at 5-6.

¶ 15    The operative Virgin Islands Rule of Evidence is as follows:

<u>Rule 701. Opinion Testimony by Lay Witnesses</u>

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[5]

¶ 16    In ruling on the Motion, the Court must determine whether, as Plaintiff avers, these facts are "within the common experience of the average juror." To the contrary, Peppertree insists that a jury would necessarily need to speculate concerning causation if trial evidence does not include "scientific, technical, or other specialized knowledge" that can come in only through expert testimony.

¶ 17    The plaintiff in *Charles* "was permitted to support the causation element with the lay testimony that the McDonald's sandwich that she partially consumed caused her injuries, if such a conclusion related to a matter within a layperson's scope of knowledge. However, if the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case." 2019 VI 29, ¶ 19 (citations and internal quotation omitted). Here, Hughes may survive summary judgment on the issue of causation solely relying upon lay testimony only to the extent that the lay witness conclusions on causation are matters within a layperson's scope of knowledge. conversely, if such conclusions regarding causation are not within the common knowledge of laypersons, Hughes can only establish a *prima facie* case on the element of causation through expert testimony.

¶ 18    On appeal from the trial court's grant of summary judgment for failure of proof of the element of causation, Charles contended that the ruling "disregarded or discredited her ability, as a layperson, to discern what foods are good and fit for human consumption and what foods are not." Further, she argued that by Federal Rule of Evidence 701, "she was permitted as a layperson to testify as to what in her opinion, caused her to break out itching and with blisters as she did."

---

[5] Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* at ¶ 16.[6] The Supreme Court recognized that Charles, as a layperson, was permitted to testify about her personal symptoms and experience after consuming the McDonald's sandwich. However, her lay opinion that the sandwich caused her symptoms, based upon their onset shortly after its consumption, "is highly speculative and is not sufficient proof that the sandwich she partially consumed caused her injuries." *Id.* at ¶ 24. The trial court's entry of summary judgment was affirmed because Charles presented no affidavit or deposition of a physician or other expert with the necessary scientific, technical or other specialized knowledge, to "offer[] an opinion that there was a causal linkage between Charles' illness and the McDonald's sandwich that she partially consumed." *Id.*

¶ 19    Plaintiff cites *Berry v. City of Detroit*, 25 F. 3d 1342 (6th Cir. 1994) wherein the Sixth Circuit reversed a six million dollar jury damages award in a police shooting case. The court determined that the plaintiff's evidence was insufficient to prove that the defendant city's deliberate indifference in discipline of officers was a proximate cause of the shooting by the defendant officer. Specifically, plaintiff's expert witness did not have the qualifications to testify as an expert on the question and no proper foundation was laid for his ultimate opinion. In her Opposition here, Plaintiff quotes a portion of the Sixth Circuit's observation in dicta, which is more accurately read in its entirety: "To the degree one might be tempted to argue that 'everyone knows that if discipline is lax more infractions occur,' this argument proves too much. If everyone knows this, then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue . . . ' Fed. R. Evid. 702." *Id.* at 1350; *see* Opposition, at 6.

¶ 20    Contrary to Plaintiff's assertion here, everyone does not know about industry standards and methods of anchoring mobile homes to their foundations, or strength of metals and the effects of rusting, or other related necessary prerequisites to a finding of liability against Peppertree. Despite Hughes' claims, a trial jury cannot "easily determine, based on its experience, knowledge and common sense, that rusted and rotted anchors are not adequate to secure a mobile home." *Id.* Hughes testified that before Maria, she had examined the straps securing Peppertree's adjacent

---

[6] Summary judgment was entered by the trial court in *Charles* prior to the March 31, 2017 effective date of the Virgin Islands Rules of Evidence, during which time the Federal Rules of Evidence applied to matters in the Superior Court. *See* Act No. 1761, April 7, 2010. FRE 701 is substantively identical to VIRE 701. *See Charles*, 2019 VI 29, ¶ 16 n.4.

unit to its foundation. "The straps was not on. It looked like they had burst. They had rotted. They was rotting, 'cause they're metal, so they look like they was - they wasn't no good, but they wasn't on." Further, Hughes stated that "my testimony is it had the straps, but they was not on. It was break. It was like deteriorate. It wasn't on the home." Opposition, Exh. A, Hughes depos. at 36.

¶ 21    Plaintiff offers no clarification or explanation that would be necessary to provide answers to basic questions essential to "assist the trier of fact to understand the evidence" and to determine the facts in issue. Without evidence regarding the significance of the condition of the straps on the lot 7-1 unit, a trial jury would have no basis upon which to make any determination regarding causation and would be left to speculate on matters that could only the addressed by one or more experts with scientific, technical or other specialized knowledge, as provided by Rule 702. Absent expert testimony from a person in the mobile home industry, an engineer and/or a metallurgist, the jury has no basis upon which to determine the issues of causation.

¶ 22    The case of *Davis v. Hovensa, LLC,* 63 V.I. 475 (V.I. Super. 2015) is instructive. There, the plaintiff's negligence and products liability claims regarding injuries sustained while working with a water blaster were the subject of a motion for summary judgment. Among the movant's arguments was "that expert testimony is required as to any alleged defect to the ultra high pressure water blaster since the equipment is complex and beyond the knowledge and experience of an average person." 63 V.I. at 483. The plaintiff "argued that evidence regarding a change in pressure or a surge in the ultra high pressure water blaster is not the type of 'scientific, technical, or other specialized knowledge' requiring an expert opinion by FED. R. EVID. 702, and that his own testimony of the surge based on his experience and perception is sufficient." *Id.* at 484.

¶ 23    The *Davis* court granted summary judgment on the design defect claim, holding that

> contrary to Plaintiff's contention, the Court finds that the inner workings of the ultra high pressure water blaster and pressure surges is the type of evidence that is "scientific, technical, or other specialized knowledge" that falls within the scope of FED. R. EVID. 702. Ultra high pressure water blaster is a specialized equipment that most people are not familiar with. Accordingly, most people are not familiar with the inner workings of the ultra high pressure water blaster and whether pressure surges are possible. As such, expert testimony is required as to the alleged defect of the ultra high pressure water blaster and the reasonable alternative design.

63 V.I. at 492.

¶ 24    While this case presents a negligence theory of liability rather than products liability, the analysis of what is within the common understanding of the average juror is the same. Without expert testimony with regard to industry standards for securing mobile home trailers to their foundations and the materials and methods required, testimony of lay witnesses "is highly speculative and is not sufficient proof" that acts and omissions of Peppertree caused the damages of which plaintiff complains. *Charles v. Arcos Dorados*, 2019 VI 29, ¶ 24. In response to Peppertree's Motion, Hughes has not produced actual evidence or identified potentially admissible proof of the causal relationship between the manner by which Peppertree secured and maintained the anchoring system to its unit on lot 7-1 and the damages she claims. Because Plaintiff's proof is insufficient to prove the element of proximate causation, Peppertree's Motion will be granted.

## CONCLUSION

¶ 25    Peppertree moves for summary judgment on the grounds that: Plaintiff Hughes cannot prove that any act or omission of Peppertree caused her damages; and that, even if she were able to assert a claim for property damage, any recovery is limited to the diminution in value of the mobile home unit, not its replacement cost. The Court addresses only the issue of the sufficiency of Hughes' proffer of proof of causation. Because the element of proximate cause can only be determined by proof requiring scientific, technical, or other specialized knowledge, Hughes cannot rely solely upon lay opinion testimony under VIRE 701(c). In light of Plaintiff's failure to respond to the Motion by identifying potentially admissible evidence that could support a jury finding that acts and omissions of Peppertree caused her alleged damages, the Motion will be granted and Plaintiff's Complaint will be dismissed with prejudice. A Judgment Order enters herewith.

DATED: January 21, 2020.

DOUGLAS A. BRADY, JUDGE

ATTEST:
ESTRELLA H. GEORGE
Clerk of the Court

By: 
Court Clerk Supervisor 1/22/2020